**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Louis Curry, | ) | No. CV-06-1578-PHX-FJM |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| R. James Nicholson, Secretary of United States Department of Veterans Affairs, | ) ) ) | |
| Defendant. | ) ) | |

The court has before it defendant's motion for summary judgment (doc. 53) and statement of facts (doc. 55), plaintiff's response (doc. 64) and statement of facts (doc. 66), and defendant's reply (doc. 77). The court also has before it plaintiff's motion for summary judgment (doc. 56) and statement of facts (doc. 57), defendant's response (doc. 61) and controverting statement of facts (doc. 63), and plaintiff's reply (doc. 78).

Additionally, the court has before it defendant's supplemental memorandum (doc. 85), motion to seal (doc. 86), and attachments (doc. 87), and plaintiff's supplemental memorandum (doc. 88), motion to seal (doc. 93), and attachments (doc. 89, ex. 1–22). The court also has before it defendant's supplement to court ordered briefing (doc. 91) and notice of supplemental authority (doc. 96), plaintiff's objection to defendant's supplement to court ordered briefing (doc. 95), and defendant's response (doc. 110).

For the reasons stated in our order of January 25, 2008 (doc. 69), the motions to seal are granted. Because we invited supplemental briefing from the parties (doc. 80), we overrule plaintiff's objection to defendant's supplement to court ordered briefing, and we have considered the document. For the following reasons, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

**I**

This is an employment matter. Plaintiff has worked for the Carl T. Hayden Veterans Affairs Medical Center ("VAMC" or "defendant") in Phoenix since 1990. He began as a housekeeper aide and has been promoted several times. Around July 1996, he got a position billing insurance companies and stayed in that role for one to two years. After a stint in a different position, he returned to billing in October 1998.

Plaintiff's tenure at VAMC has been contentious. This is his second action in the United States District Court against his employer. He has also filed at least a dozen complaints with the Equal Employment Opportunity Commission ("EEOC") and many union grievances. Some of these incidents are relevant to this action.

In May 2002, plaintiff's supervisor issued an official reprimand to plaintiff for conducting union business while on duty. Plaintiff grieved the reprimand and prevailed. It was determined that the reprimand would be set aside and removed from his personnel file and that a less serious "letter of counseling" would be issued in its place. The letter of counseling was issued August 9, 2002, but the reprimand was not removed.

Plaintiff had an action pending in United States District Court, filed in April 2001, alleging racial discrimination. That action was terminated in September 2003 by a settlement agreement, pursuant to which VAMC agreed to remove the August 2002 letter of counseling from plaintiff's personnel file. In 2005, plaintiff discovered that the May 2002 reprimand was still in his file. He filed a grievance, and VAMC agreed to remove the reprimand, calling it an oversight.

Also pursuant to the September 2003 settlement, plaintiff was promoted to his current position as an administrative officer of the day ("AOD"). As an AOD, plaintiff

1 checks patients in and out of the emergency room and handles clerical work, generally on
2 "off hours"—evenings, nights, and weekends. Plaintiff contends that the scheduling has
3 been unfair and that he has been required to work every holiday except one since the
4 promotion. Defendant, meanwhile, contends that plaintiff has had several holidays off and
5 that the difficult schedule is characteristic of the AOD position. Plaintiff grieved his
6 AOD work schedule in June 2005, and an arbitrator ultimately decided that there was no
7 violation of federal law.

8 Soon after receiving his promotion to AOD, plaintiff was notified that he had to
9 discontinue union activities because the position was a non-bargaining management
10 position, though it had been mistakenly identified as non-management in certain documents.
11 Defendant contends that the position's bargaining unit status ("BUS") code meant that
12 it had been non-bargaining for many years. Plaintiff contends that defendant changed the
13 AOD position's BUS code in order to stop his union activity. Plaintiff, through the union,
14 challenged the classification, and an administrative law judge ultimately determined that the
15 position was non-management. Therefore, in March 2005, all AOD positions, including
16 plaintiff's, were reclassified as bargaining.

17 In April 2004, plaintiff was working as AOD when a mentally disturbed patient
18 became agitated because an ambulance was not immediately available to take him back to
19 his rehabilitation facility. Plaintiff contends that the physician on duty told him to send the
20 discharged patient home in a taxi. The physician denied giving those instructions, saying he
21 ordered transport by ambulance. Plaintiff sent the patient by taxi, but he did not make it all
22 the way home. The patient was ultimately found confused and wandering around the
23 grounds of the rehabilitation facility. Plaintiff's supervisor credited the physician's version
24 of events and proposed a five-day suspension as discipline for plaintiff's conduct. Plaintiff
25 successfully grieved the proposed discipline, and it was cancelled in May 2005.

26 In October 2004, plaintiff applied for a position as a supervisory program specialist,
27 or "billing supervisor." Several candidates applied for the advertised position. The decision
28 maker in the hiring process was Brad Curry, who had been plaintiff's supervisor for

1  approximately one year. Ultimately, Brad Curry selected a different candidate, Meleanie
2  Hardy, for the billing supervisor position and contends that he believed she was more
3  qualified. Plaintiff, meanwhile, contends that Meleanie Hardy was not qualified for the
4  position and that he was passed over for discriminatory and retaliatory reasons.

5  Though he does not number them in the complaint, plaintiff asserts six counts.
6  Plaintiff alleges racial discrimination (count one) and retaliation for participation in protected
7  activity (count two), in violation of Title VII, 42 U.S.C.§ 2000e-16. Plaintiff also alleges
8  breach of contract (count three), breach of the implied covenant of good faith and fair dealing
9  (count four), promissory estoppel (count five), and negligent misrepresentation (count six),
10 under state law.

**II**

12 We first address counts three through six. Plaintiff has not moved for summary
13 judgment on these counts, but VAMC has. As stated above, plaintiff, through a union
14 grievance, had a May 2002 official reprimand set aside and a less serious August 2002
15 "letter of counseling" issued in its place. In the September 2003 settlement agreement that
16 terminated plaintiff's first action in the district court, VAMC promised to "withdraw from
17 plaintiff's personnel file a letter of counseling dated August 2002." PSOF in Support of
18 Response at BL00104.

19 On April 28, 2005, plaintiff received a letter confirming that "a reprimand dated
20 5/28/02" had not been removed from his file. Id. ¶ 23; Id. Ex. 4. He contends that the
21 "Letter of reprimand is the letter of counseling," id. ¶ 24, and that VAMC breached the
22 settlement agreement "by failing to remove the derogatory letter" from his personnel file.
23 Id. ¶ 25. Counts three, four, and five are contract claims, and count six a tort claim, based
24 on these contentions.

25 There is a basic problem with these claims. The settlement agreement specifically
26 calls for the removal of the August 2002 letter of counseling, yet plaintiff alleges only that
27 the May 2002 reprimand was left in his file. The evidence makes clear that the reprimand
28 and the letter of counseling are two different documents. Plaintiff's contention that they are

- 4 -

one in the same is without support in the record. Alternatively, plaintiff contends that the "intent" of the settlement agreement was to have all of the related disciplinary documents removed from his file. Plaintiff's Response at 15–16. By its plain terms, the settlement was not breached by the failure to remove the May 2002 reprimand. And even if there were a breach of the intent of the settlement, counts three through six fail for other reasons.

The United States and its agencies are immune from suit unless there has been an unequivocal waiver of sovereign immunity. Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997). Congress expressly waived the sovereign immunity of federal agency employers for claims brought under Title VII, 42 U.S.C. § 2000e-16. However, plaintiff provides no authority that this waiver extends to contract claims for money damages based on breach of a Title VII settlement agreement. See Frahm v. United States, 492 F.3d 258, 262 (4th Cir. 2007) (concluding that it does not); accord Lindstrom v. United States, 510 F.3d 1191, 1194 (10th Cir. 2007). And, clearly, the government has not waived sovereign immunity for a cause of action based on promissory estoppel. Jablon v. United States, 657 F.2d 1064, 1070 (9th Cir. 1981). Accordingly, we grant summary judgment for defendant on count three (breach of contract), count four (breach of good faith and fair dealing), and count five (promissory estoppel).[1]

Count six, negligent misrepresentation, sounds in tort and is also barred by sovereign immunity. United States v. Neustadt, 366 U.S. 696, 710–11, 81 S. Ct. 1294, 1302–03 (1961). The Federal Tort Claims Act ("FTCA") waives the sovereign immunity of the United States for tort liability, but misrepresentation claims are specifically excluded from the waiver. 28 U.S.C. § 2680(h). Furthermore, plaintiff's claim fails because, under the FTCA, the United

---

[1] Even if sovereign immunity did not bar the contract claims, they are not properly brought in this court if we are to credit plaintiff's first supplemental disclosure statement, in which he alleges $20,000 in contract damages. DSOF, Ex. F. The Tucker Act, 28 U.S.C. § 1491(a)(1), confers exclusive jurisdiction on the United States Court of Federal Claims for contract actions against the government exceeding $10,000. M-S-R Public Power Agcy. v. Bonneville Power Admin., 297 F.3d 833, 840 (9th Cir. 2002). Plaintiff retreats to a lesser demand in his responsive memorandum. Plaintiff's Response at 15.

- 5 -

1 States is the only proper defendant in a tort action against a federal agency, 28 U.S.C. § 2679(a), and filing an administrative claim is a jurisdictional prerequisite to an action in the district court, Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir. 1980). Defendant is entitled to summary judgment on count six.

### III

#### A.

We now turn to plaintiff's Title VII counts, racial discrimination (count one) and retaliation (count two). Title VII claims are subject to "rigorous administrative exhaustion requirements." Vinieratos v. U.S. Dept. of the Air Force, 939 F.2d 762, 770 (9th Cir. 1991) (quoting Brown v. GSA, 425 U.S. 820, 833, 96 S.Ct. 1961, 1968 (1976)). Before bringing an action in the district court, an employee must first file a charge with the EEOC, giving the agency an opportunity to investigate. 42 U.S.C. § 2000e-16(c); Sommatino v. United States, 255 F.3d 704, 707–08 (9th Cir. 2001).

Plaintiff initiated the administrative process with an informal interview at the Veterans Affairs Office of Resolution Management on December 22, 2004. DSOF, Ex. A-6. He alleged "that he was not selected for the [billing supervisor] position, based on his prior EEO activities." Id. According to the interview notes, plaintiff discussed a prior EEO complaint (the one leading to the first action in the district court) and "stated that he believes he is the best qualified candidate for the [billing supervisor position]" Id. Then, "as background information" and "to validate that he is being constantly retaliated against," plaintiff discussed the BUS code issue and VAMC's discipline of him for sending the mentally disturbed patient home by taxi.

On January 24, 2005, plaintiff signed a formal Complaint of Employment Discrimination, alleging "reprisal for prior EEO activity," specifically "non-selection supervisory program specialist." DSOF, Ex. A-7. On March 24, 2005, he submitted a written affidavit in support of his "non-selection" claim, which had been accepted for EEO investigation. DSOF, Ex. A-8. The content of the affidavit is similar to that of the initial interview, except that plaintiff stresses that all of VAMC's top management, including Brad

- 6 -

Curry, knew of his previous EEO complaints and the first action in the district court. Id. Defendant contends, and plaintiff concedes by his silence, that the initial interview, the formal complaint, and the written affidavit comprise the only information that plaintiff provided for his EEO charge. DSOF ¶ 104.[2] The EEOC issued a decision in May 2006, but the parties have not informed us of its conclusions.

Though plaintiff had previously filed EEO complaints of racial discrimination, there is absolutely no indication that racial discrimination was anywhere alleged in the most recent charge. Because plaintiff has not exhausted administrative remedies for a racial discrimination claim, defendant is entitled to summary judgment on count one.

We turn to count two. To establish a prima facie case of retaliation, a plaintiff must show 1) that he engaged in a protected activity, 2) that he suffered an adverse employment action, and 3) that there is a causal nexus between the two. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). Count two consists of what are essentially four distinct claims of retaliation, based on four alleged adverse actions: 1) plaintiff has been given unfair work schedules as AOD; 2) VAMC reclassified his AOD position so that he could not participate in the union; 3) VAMC instituted discipline, later cancelled, for the taxi incident; and 4) he was passed over for promotion in favor of an unqualified candidate. Plaintiff's Motion at 12–13; Plaintiff's Response at 13–14.

Plaintiff has not exhausted administrative remedies for *all* allegations of retaliation merely by using the word "reprisal" in his EEO charge. See Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 637 (9th Cir. 2002). Allegations not included in an administrative charge "may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1100 (9th Cir. 2002) (internal quotation omitted). In making that

---

[2] We note that plaintiff did not comply with LRCiv 56.1, requiring a party opposing a motion for summary judgment to file a controverting statement of facts that specifically addresses, paragraph by paragraph, the movant's statement of facts. Instead, plaintiff filed in response a new statement of facts, which is not helpful.

determination it is proper to look at the specific factual allegations, not just the general legal theory of the claim. See id.; see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073 (2002) ("[Each] retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"). At the very least, for administrative remedies to have been exhausted, the allegations must "fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the [administrative] charge." Vasquez v. County of L.A., 349 F.3d 634, 644 (9th Cir. 2003).

Defendant is entitled to summary judgment on the claim that VAMC retaliated by giving plaintiff an unfair work schedule. This allegation was nowhere raised in plaintiff's EEO charge; therefore, administrative remedies have not been exhausted.

Defendant is also entitled to summary judgment on the claims that VAMC retaliated by reclassifying the bargaining status of the AOD position and by disciplining plaintiff for the taxi incident. Though plaintiff mentioned these matters in his EEO interview and again in the written affidavit, they were presented as "background information," not as allegations that the EEOC was expected to investigate. Indeed, under the Federal Labor-Management Relations Act, 5 U.S.C. §§ 7101–35, plaintiff could not have based his EEO charge on these matters, because he had already grieved them through union procedures. Id. § 7121(d); Vinieratos, 939 F.2d at 768 ("Under the terms of the Act, a federal employee who alleges employment discrimination must elect to pursue his claim under either a statutory procedure or a union-assistance procedure; he cannot pursue both avenues, and his election is irrevocable.").

**B.**

Plaintiff's only exhausted retaliation claim is that VAMC retaliated by not promoting him to billing supervisor. Plaintiff contends that the denial of promotion was retaliation for his challenging the BUS code of the AOD position through union grievance procedures. Plaintiff's Motion at 13. Plaintiff satisfies the first element of the prima facie case, because filing a union grievance is protected activity. See Pardi v. Kaiser Found. Hosps., 389 F.3d

1  840, 850 (9th Cir. 2004). Plaintiff also satisfies the second element, because denial of
2  promotion qualifies as an adverse employment action. McGinest v. GTE Serv. Corp., 360
3  F.3d 1103, 1125 n.19 (9th Cir. 2004).

4  For the final element of the prima facie case, plaintiff must establish a causal nexus
5  between his union grievance and the denial of promotion. Plaintiff contends that causal
6  nexus can be inferred from proximity in time: "Less than 30 days after the FLRA determined
7  that the Bus Codes should not have been changed Louis is denied a promotion to Supervisory
8  Program Specialist." Plaintiff's Motion at 13. Yet, according to the record, the FLRA made
9  its decision on the AOD position on March 18, 2005—*after* plaintiff was denied promotion
10 on December 21, 2004. Plaintiff's Motion, Ex. 10 ; id., Ex. 13. However, the causal nexus
11 element of the prima facie case is not particularly rigorous, and nexus could perhaps be
12 inferred from the sheer number of plaintiff's EEO complaints and union grievances of which
13 VAMC was aware prior to denying him the promotion. See E.E.O.C. v. Crown Zellerbach
14 Corp., 720 F.2d 1008, 1012 n.1 (9th Cir. 1983).

15 Assuming plaintiff is able to make out a prima facie case of retaliation, the burden
16 shifts to VAMC to provide a legitimate, non-retaliatory reason for the employment action,
17 Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987), which they have done. Brad
18 Curry, who hired the new billing supervisor, contends that he selected Meleanie Hardy
19 (of the same race as plaintiff) because she was the most qualified candidate. Therefore, the
20 burden shifts back to plaintiff to show that this explanation is pretextual. Bergene v. Salt
21 River Project Agric. Improvement & Power Dist., 272 F.3d 1136, 1141 (9th Cir. 2001).

22 First, plaintiff contends that Hardy was "not qualified for the position." Plaintiff's
23 Response at 13. It appears that this contention is based primarily on an argument that Hardy
24 was not technically eligible for promotion to the billing supervisor position under federal
25 guidelines. Plaintiff's Motion at 8–10. Hardy was awarded the billing supervisor position
26 at the GS-7 level, and plaintiff contends that she did not have sufficient experience to
27 qualify for that level. We disagree.
28

1   Under the United States Office of Personnel Management Operating Manual, to
2   qualify for a GS-7 position an employee must have "specialized" experience of "1 year
3   equivalent to at least GS-5" (doc. 87, ex. E-1). Similarly, under the Code of Federal
4   Regulations, advancement to a GS-7 position requires "a minimum of 52 weeks in positions:
5   (1) No more than two grades lower (or equivalent)." 5 C.F.R. § 300.604(b). When Hardy
6   applied for the billing supervisor position, she had eight months of experience at GS-5, three
7   months at GS-6, and eight months at GS-7 (doc. 87, ex. E-3)—more than enough to qualify
8   under both the Manual and the federal regulations.

9   Plaintiff's contentions to the contrary are without merit. With no authority he asserts
10  that "training time" does not count for calculation of experience under the Manual, and he
11  misquotes the Federal Regulations as stating that candidates for advancement "must have
12  completed a minimum of 52 weeks in [their present] position." Plaintiff's Supplementary
13  Briefing at 9–10.

14  Brad Curry considered plaintiff and Hardy the top two candidates for the billing
15  supervisor position, and he had some discretion in choosing between the two. In a report
16  filed with the EEO counselor (doc. 55, ex. A-5) and in his deposition (doc. 55, ex. B), he was
17  asked to account for his reasons for selecting Hardy. Plaintiff contends that Brad Curry's
18  stated reasons are "unworthy of credence" and therefore suggest retaliation. Plaintiff's
19  Response at 9.

20  Brad Curry stated that he selected Hardy because she was the best applicant. He
21  stated that Hardy was a superior biller and had better management skills, even though
22  plaintiff had more experience. Brad Curry reported an exceptional working experience with
23  Hardy and noted that she took a lot of initiative, needed limited guidance, and was a good
24  leader. Plaintiff challenges this description by denigrating some of Hardy's former positions
25  as "secretarial in nature" and not indicative of "exceptional skill and ability to lead."
26  Plaintiff's Response at 10. These are petty objections. Hardy has held a number of positions,
27  with varied responsibilities, at VAMC since 1990, and there is no evidence that she has not
28  performed at a high level.

Regarding plaintiff, Brad Curry stated that he was a good worker, with whom he had a good working relationship. However, Brad Curry also stated that plaintiff required guidance, was not a self-starter, often questioned assignments, and completed projects on his own time. Plaintiff challenges the characterization of his qualifications by Brad Curry. He points out that Brad Curry, as plaintiff's supervisor, consistently rated him "successful" on performance evaluations, with no negative comments, and even gave him an award in August 2003 for work on a special project. On the award, Brad Curry indicated plaintiff's initiative, creativity and innovation, unusual effort, and exceptional teamwork (doc. 66, ex. 24).

The performance evaluations are hardly controlling, as they only gave Brad Curry the choice to rate an employee as "successful" or "unsuccessful," and he testified that "to be unsuccessful, you have to be really unsuccessful" (doc. 55, ex. B at 44). True, Brad Curry had the opportunity to specifically record any shortcomings on the evaluations and he did not do so, but these forms did not demand the kind of nuance that would be useful in evaluating employees for a promotion. There is a discrepancy between Brad Curry's commendation of plaintiff in the August 2003 award and his description of plaintiff's qualifications in explaining the denial of promotion, but again this strikes us as barely probative. Brad Curry never said that plaintiff was a bad employee, only that he was not the most qualified for a particular promotion. This is not inconsistent with Brad Curry's giving plaintiff an award for his work on an earlier project, even one couched in superlative terms.

Plaintiff contends that he has presented "persuasive direct evidence that Defendant's legitimate non-discriminatory explanations are unworthy of credence." Plaintiff's Response at 10 (emphasis in original). However, there is certainly no "direct" evidence of pretext. What plaintiff has put forth is the definition of circumstantial evidence, which "must be specific and substantial in order to survive summary judgment." Bergene, 272 F.3d at 1142. We conclude that plaintiff's evidence is insufficient. Defendant is entitled to summary judgment on the retaliation claim.

- 11 -

## IV

For the foregoing reasons**, IT IS HEREBY ORDERED GRANTING** defendant's motion for summary judgment (doc. 53) and **DENYING** plaintiff's motion for summary judgment (doc. 56).  For the reasons in our order of January 25, 2008 (doc. 69), **IT IS FURTHER ORDERED GRANTING** the motions to seal (docs. 86 & 93).  The clerk is directed to enter final judgment.

DATED this 5th day of May, 2008.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge